UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
MAY 14 2026
ANDREW W. MOELLER, CLERK
WESTERN DISTRICT OF NY

ZAKKIYYA CARTER, as Pro se,

Plaintiff,

v.

25-CV-740 (JLS) (MJR)

CITY OF BUFFALO, JANE AND JOHN DOES, MIA SULLIVAN, JENNIFER HUBACHER, ASHLEY WACZKOWSKI, DAWN FREEMAN, SUICIDE INTERVENTION AND CRISIS SERVICES INC.[1], LAURA HANRAHAN, M.D., UNIQUE OUTLAW JONES, M.D., REBECCA HICKS, M.D., LAURA FLEMMING, JANE AND JOHN DOES, ERIE COUNTY MEDICAL CENTER, ERIE COUNTY MEDICAL CENTER COPORATION, NICOLE ABRUZZINO, PAUL FEROLETO, SAMANTHA VENTURA, JANE AND JOHN DOES, ALICIA FLOOD and SHALONNA WATTS,

Defendants.

## DECISION AND ORDER

*Pro se* Plaintiff Zakkiyya Carter ("Carter") filed this action seeking relief under 42 U.S.C. §§ 1983, 1985(3), and 1988 and under the Fourth and Fourteenth

[1] The caption on the Complaint incorrectly states "SUICIDE PREVENTION AND CRISIS SERVICES INC." where the Defendant is referred to as "SUICIDE INTERVENTION AND CRISIS SERVICES INC." throughout the Complaint. The Clerk is directed to amend the caption as it appears above.

Amendments to the United States Constitution. *See* Dkt. 1 at 7 ¶ 31.[2] Because Carter paid the required filing fee, the Court screens her complaint. For the reasons that follow, Carter's causes of action for *Monell* liability, false arrest, procedural due process violations, and Section 1983 conspiracy may proceed to service. The remaining causes of action are dismissed with leave to amend.

## DISCUSSION

## I. Legal Standards

### A. Review Under the IFP Statute

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). A court shall dismiss the complaint if it determines that the action (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court must "accept all of the facts alleged in the complaint as true and draw all inferences in the plaintiff's favor." *Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003). And it must construe *pro se* pleadings "liberally" and "interpret them to raise the strongest arguments that they suggest." *Siao-Pao v. Connolly*, 564 F. Supp. 2d 232, 238 (S.D.N.Y. 2008) (citation omitted).

---

[2] Page numbers refer to the CM/ECF generated numbering in the header of each page.

### B. Pleading Standard

When evaluating a complaint, a court must accept all factual allegations as true and must draw all inferences in a plaintiff's favor. *See Larkin*, 318 F.3d at 139; *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even a *pro se* complaint must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make "a short and plain statement of the claim showing that the pleader is entitled to relief."

A complaint states a claim for relief if the claim is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, although a *pro se* complaint need not provide every last detail in support of a claim, it must allege sufficient facts to support the claim. *See Shibeshi v. City of New York*, 475 F. App'x 807, 808 (2d Cir. 2012) (concluding that district court properly dismissed a *pro se* complaint under Section 1915(e)(2) because the complaint did not meet the pleading standard in *Twombly* and *Iqbal*); *accord Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (setting forth same standard of review).

### C. Leave to Amend

Generally, a court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal, "unless [it] can rule out any possibility, however unlikely . . . , that an amended complaint would succeed in stating a claim." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (quoting *Gomez v. USAA Federal Savings Bank,* 171 F.3d 794, 796 (2d Cir. 1999). But a court may deny leave to amend pleadings when any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive[] . . . it is not an abuse of discretion to deny leave to amend").

### D. Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff "must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). Section 1983 "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under Section 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation;

it is not enough to assert that the defendant is a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). Moreover, *respondeat superior* liability is unavailable in a Section 1983 action. *See Hernandez v. Keane*, 341 F.3d at 137, 144 (2d Cir. 2003). There is "no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Rather, at the screening stage, a plaintiff must plausibly allege "that each Government-official defendant, through the official's own individual actions[] . . . violated the Constitution." *Id.* (quoting *Iqbal*, 556 U.S. 676).

## II. Carter's Allegations

This case arises from Carter's alleged exposure to mold "stemming from hazardous living conditions in her former residence." Dkt. 1 at 7 ¶ 32. After contacting her landlord, Carter alleges that she was threatened by Towne Housing Real Estate Agency, a non-party to this action. *Id.* Carter alleges that after she "escalated her complaints and threatened legal action," she "began experiencing coordinated acts of intimidation, including mail tampering, burglary, theft, unlawful planting of contraband, computer crimes, and organized stalking" by "multiple actors and agencies, including the Buffalo Police Department, Erie County Child Protection Service (Central Park facility), and Erie County Family Court. *Id.* at 7-8. Specifically, Carter alleges that she "endured four separate harassing encounters with E-District officers, including an unlawfully initiated DWI charge that she successfully defeated in court after over two years of

litigation." *Id.* Carter claims that none of her reports about this alleged pattern of conduct "were meaningfully investigated to this day." *Id.*

Carter alleges that on August 29, 2022, Defendants Alicia Flood ("Flood") and Shalonna Watts ("Watts") invaded her privacy by "repeatedly calling her phone," unlawfully obtaining her location, engaging in stalking and harassment, and trespassing onto her property, all causing Carter "concern for her personal safety. *Id.* at 9-10. Carter alleges that certain City of Buffalo "E-District officers" and a representative from Defendant Suicide Intervention Crisis Services Inc. ("Crisis Services") arrived at the scene and threatened Carter with arrest "unless she complied with transportation to ECMC for a psychiatric evaluation." *Id.* at 10-11. Carter contends that the City of Buffalo "E-District officers" and the Crisis Services representative reported to the scene as a result of Flood and Watts making "false and malicious" claims that Carter was engaging in "erratic behavior and mental illness." *Id.* at 10. Carter claims that the "coordinated actions of [Defendants] and the unidentified and identified external parties involved represent a deliberate and unlawful conspiracy to deprive [Carter] of her liberty under false pretenses and in the absence of lawful authority." *Id.* at 14 ¶ 60.

Carter also alleges similar claims against Erie County Medical Center ("ECMC"), Erie County Medical Center Corporation ("ECMCC"), and several identified and unidentified ECMC employees for events that transpired after the above events. *Id.* at 31. Specifically, Carter alleges that she was "detained under the custody of ECMCC, not free to leave, and subjected to evaluations." *Id.* at 32 ¶

136. Carter claims that the evaluations occurred without her consent and "without clear and convincing evidence to justify a finding of serious mental illness." *Id.* Carter claims that she was then subjected to "an unauthorized evaluation conducted by Defendant Nicole Abruzzino," which was later "used to negatively influence a concurrent Family Court proceeding." *Id.* at 35 ¶¶ 146-148. Additionally, Carter claims that Defendant Markeith Pridgeon tampered with her cell phone while she was "detained." *See id.* at 36 ¶¶ 152-156.

Finally, Carter asserts claims against Defendants Julia Ringle, Paula Feroleto, and Samantha Ventura for a "discharge hearing" held on September 7, 2022. *Id.* at 47. Carter claims that the hearing was "orchestrated as a part of a broader conspiracy to deprive her of her civil rights" and infringed Carter's Fourteenth Amendment due process rights, her Fourth Amendment protections against unlawful seizure, "and her personal autonomy." *Id.* 47-50.

## III. Analysis

### A. Municipal Defendants

Carter sues a number of municipal defendants, including the City of Buffalo and ECMC[3]. The Complaint also names several Buffalo E-District Officers as "John

[3] ECMC is a New York State Public Benefit Corporation. *See* https://www.ecmc.edu/why-choose-us/corporate-governance/ (last visited July 11, 2025); *cf. Pierre v. Dep't of Corr. & Cmty. Supervision*, No. 21-CV-163-LJV, 2021 WL 11605447, at *4 (W.D.N.Y. Sept. 29, 2021) (taking judicial notice of the ownership of the Wyoming County Community Hospital). As such, it is treated as a municipality for purpose of a Section 1983 claim. *See Lewis v. Cuomo*, No. 20-CV-6316 CJS, 2021 WL 5827274, at *15 (W.D.N.Y. Dec. 8, 2021) ("A public benefit corporation is considered a municipality that may be sued under Section 1983, provided that the Complaint adequately states a basis for the imposition of *Monell* liability.").

Doe" in their official capacities, which is the functional equivalent of a suit against their employers, the City of Buffalo. *See Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 687 (2d Cir. 2005) ("[A] [Section] 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself." (citing *Brandon v. Holt*, 469 U.S. 464, 471-73 (1985)).

A municipality cannot be held liable under Section 1983 unless the challenged action was undertaken pursuant to a municipal policy or custom. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). To state such a claim, a plaintiff must plead three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

An official policy or custom can be established by showing:

> (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates.

*Kurmangaliyev v. City of New York*, 2023 WL 8654023, at *2 (E.D.N.Y. Dec. 14, 2023) (citing cases).

Carter has successfully alleged a *Monell* claim against the City of Buffalo for screening purposes. The Complaint alleges that the "City of Buffalo, through its police department, including E-District officers has maintained an unconstitutional practice of unlawfully seizing civilians under the guise of mental health crisis without warrants, probable cause, or lawful procedures." Dkt. 1 at 29 ¶ 123.

Specifically, Carter alleges that she "was subjected to four separate, unlawful encounters by these officers within a 26-day period in the month of August 2022." *Id.* Carter also references other cases filed in this district where plaintiffs alleged unconstitutional conduct by City of Buffalo police officers. *Id.* at 30 ¶ 126. Because Carter's complaint presents a "colorable" *Monell* claim against the City of Buffalo, it survives screening under 28 U.S.C. § 1915(e)(2). *See Benitez v. Wolff*, 907 F.2d 1293, 1295 (2d Cir. 1990) ("*Sua sponte* dismissal of a *pro se* complaint prior to service of process is a draconian device which is warranted only when the complaint lacks an arguable basis either in law or in fact [or is] frivolous on its face or wholly insubstantial.") (citation modified); *see also Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (dismissal under Federal Rule of Civil Procedure Rule 12(b)(6) may still be appropriate notwithstanding a court's earlier finding that the complaint was not "frivolous" for purposes of Section 1915(e)(2)).

Similarly, Carter has successfully alleged a *Monell* claim against ECMC and ECMCC for screening purposes. Carter alleges that "ECMCC exhibited deliberate indifference to [Carter's] rights by allowing its personnel to: (a) unlawfully disclose confidential mental health information without proper legal authorization; (b)

obstruct lawful requests to amend medical records based on false claims of physical unavailability; (c) misrepresent the employment status of treating providers; and (d) engage in retaliatory conduct through administrative gatekeeping and suppression of unfavorable facts." Dkt. 1 at 76 ¶ 328. Specifically, Carter alleges that these violations "were not isolated incidents but stem from broader failure in ECMCC's internal policies and training programs." *Id.* at 77 ¶ 329. As a result, Carter has alleged a "colorable" claim for *Monell* liability against ECMC and ECMCC. *See Wolff*, 907 F.2d at 1295.

### B. Fourth Amendment Claims for False Arrest

Section 1983 "was intended to '[create] a species of tort liability in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S. 247, 253 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976)). A Section 1983 claim for false arrest rests on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrests without probable cause. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). To state a claim for false arrest or unlawful seizure, a plaintiff must allege: "(1) the defendant intended to confine [the plaintiff]; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (citation omitted).

Here, Carter successfully states a claim for false arrest against the City of Buffalo, ECMC, and ECMCC for screening purposes. The facts contained

throughout the Complaint—that Carter was unlawfully transported and confined for a mental health evaluation—taken as true, present a colorable cause of action for false arrest. *See Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995). However, any claims asserting liability against the City of Buffalo, ECMC, and ECMCC based on the conduct of the individual defendants acting outside their official capacities are dismissed, without leave to amend because those claims all fail under *Monell*. Carter's claims for false arrest against Defendants Jones, Hicks, Hanrahan, Ringle, Pridgeon, Flemming and the unnamed City of Buffalo officers and ECMC/ECMCC employees in their individual capacities may proceed to service. *See, e.g., Ortiz v. Orleans Cnty.*, No. 20-CV-1555 JLS MJR, 2022 WL 1241704, at *1 (W.D.N.Y. Apr. 26, 2022).

### C. Fourteenth Amendment Procedural and Substantive Due Process Claims

Substantive due process "protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense," but "not against government action that is incorrect or ill-advised." *Tavares v. Amato*, 954 F. Supp. 2d 79, 98 (N.D.N.Y. 2013) (quoting *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994)). "To establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* (quoting *Okin v. Village of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009)).

"A procedural due process claim has two elements: '(1) the existence of a property or liberty interest that was deprived; and (2) deprivation of that interest

without due process.'" *Stumpf v. Cooley*, No. 6:21-CV-06248 EAW, 2024 WL 1443647, at *3 (W.D.N.Y. Apr. 3, 2024) (quoting *Bryant v. New York State Educ. Dept.*, 692 F.3d 202, 218 (2d Cir. 2012).

Carter alleges that Defendants City of Buffalo and ECMC's unlawful confinement deprived her "of both procedural due process (notice and opportunity to be heard) and substantive due process (freedom from arbitrary government action)." Dkt. 1 at 23 ¶ 99. As pled, Defendants' actions may have been ill-advised, but it does not rise to the level of conscious shocking—given the circumstances surrounding Carter's alleged confinement.

Under these circumstances, Carter has not alleged a substantive due process claim arising from the alleged confinement for a mental health evaluation. This claim is therefore dismissed with leave to amend. Carter has stated a claim, for screening purposes, for violation of her right to procedural due process as to Defendants City of Buffalo and ECMC. After detailing the series of events leading to her confinement, Carter alleges that it was a "coordinated effort to seize and confine [her] without lawful process" by both the City of Buffalo and ECMC defendants. Dkt. at 23 ¶ 100, 59 ¶ 251-255. Accepting this allegation as true and drawing all inferences in Plaintiff's favor, these facts are sufficient to allow Plaintiff's procedural due process claim to proceed to service.

### D. Section 1983 Conspiracy Claim

"A § 1983 conspiracy claim does not stand alone without a corresponding constitutional violation; rather, it is a theory that 'will enable a plaintiff to bring

suit against purely private individuals' for violation of constitutional rights." *Griffin v. Facebook*, No. 19-CV-7821 (CS), 2020 WL 5645986, at *5 n.7 (S.D.N.Y. Sept. 21, 2020) (quoting *Porat v. Lincoln Towers Cmty. Ass'n*, No. 04-CV-3199, 2005 WL 646093, at *7 (S.D.N.Y. Mar. 21, 2005)). To allege a Section 1983 conspiracy, a plaintiff must plausibly "allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002) (citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)). A plaintiff "must provide some factual basis supporting a meeting of the minds" between the state and private actors. *D.K. by L.K. v. Teams*, 260 F. Supp. 3d 334, 363 (S.D.N.Y. 2017) (quoting *Biswas v. City of New York*, 973 F.Supp.2d 504, 533 (S.D.N.Y. 2013)); *Lewis v. Slaiby*, No. 3:23-CV-0231 (VAB), 2025 WL 821039, at *7 (D. Conn. Mar. 14, 2025).[4]

Consequently, the separate conspiracy claims against Defendants City of Buffalo, the unidentified E-District officers, Crisis Services, Flood, Watts and against Defendants ECMC, ECMCC, Abruzzino, Fleming, Jones, Hicks, Hanahan, Ringle, Ventura, Crisis Services, and other unidentified ECMC employees may proceed to service.

---

[4] The Court interprets the Complaint to allege a conspiracy pursuant to 42 U.S.C. § 1985. *See Rubinov v. Suyunova*, No. 24-CV-04375 (NCM) (LB), 2024 WL 4635250, at *4 (E.D.N.Y. Oct. 31, 2024) ("Section 1985 addresses conspiracies to interfere with an individual's constitutional rights and may include conspiracies that involve private parties. In relevant parts, Section 1985 requires the alleged conspiracy 'be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus.'" (quoting *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015)).

### E. Judicial Immunity

Carter's claims against Defendant Judge Paula L. Feroleto are dismissed for judicial immunity. It is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities. *See, e.g.*, *Mireles v. Waco*, 502 U.S. 9 (1991); *Whitnum v. Emons*, No. 3:15-CV-959 (SRU), 2015 WL 5010623, at *2 (D. Conn. Aug. 24, 2015) ("Absolute immunity applies to a judge in both her official and individual capacity."), *aff'd*, 683 F. App'x 71 (2d Cir. 2017).

Judges are accorded this immunity in order to ensure "that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley v. Fisher*, 80 U.S. 335, 347 (1871). "Thus, even allegations of bad faith or malice cannot overcome judicial immunity." *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) (citing cases).

Judicial immunity is overcome in only two sets of circumstances. "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." *Mireles*, 502 U.S. at 11. The relevant factors include the nature of the judge's action, whether the action typically is performed by a judge, whether the parties expect the judge to take such action, and whether the parties dealt with the judge in his judicial capacity. *See Stump v. Sparkman*, 435 U.S. 349, 362 (1978). "[A]cts arising out of, or related to, individual cases before the

judge are considered judicial in nature." *Bliven*, 579 F.2d at 210. "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 12.

The Complaint concedes that Judge Feroleto is a Supreme Court Justice and was "acting in such capacity during the events which give rise to this lawsuit." Dkt. 1 at 5 ¶ 22. As a result, none of Carter's claims against Judge Feroleto overcomes judicial immunity because all of the Complaint's allegations are with respect to "acts arising out of, or related to" the underlying case. *Bliven*, 579 F.2d at 210. Judge Feroleto is therefore immune from Carter's causes of action, but Carter may amend the complaint, to the extent she is able to, to overcome this immunity.

## IV. <u>Service of Process</u>

Carter has paid the filing and administrative fees for this action and therefore, is responsible for service of the Summons and Complaint. Rule 4 of the Federal Rules of Civil Procedure provides that, "[a]t the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a personal specially appointed by the court." Fed. R. Civ. P. 4(c)(3). The granting of such an order is discretionary with the Court." *Johnson v. DHS/ICE*, No. 13-CV-0288A, 2013 WL 6669232, at *3 (W.D.N.Y. Dec. 18, 2013). As such, the Clerk of Court shall send to Plaintiff a copy of the Court's "Notice Regarding Service of Summons of Complaint with Attached Request for U.S. Marshal Service."

## CONCLUSION

For the reasons above, the substantive due process claims, as well as the claims against Judge Feroleto, are dismissed with leave to amend. The claims for *Monell* liability, false arrest, procedural due process violations, and Section 1983 conspiracy may proceed to service. The remaining claims are otherwise dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim.

## ORDER

IT HEREBY IS ORDERED that Carter's claims for *Monell* liability, false arrest, procedural due process violations, and Section 1983 conspiracy may proceed to service; and it is further

ORDERED that Carter's remaining claims are dismissed with leave to amend; and it is further

ORDERED that Carter is afforded an opportunity to request an order of this Court directing service by the U.S. Marshal; the Clerk of the Court is directed to send Carter the form motion for service by the U.S. Marshal; Carter must complete and file the form by **June 15, 2026**; and it is further

ORDERED that if Carter does not file a motion for service by the U.S. Marshal by **June 15, 2026**, the Clerk of the Court shall issue summonses for the City of Buffalo, ECMC, ECMCC, Crisis Services, Flood, Watts, Abruzzino, Fleming, Jones, Hicks, Hanahan, Ringle, Ventura and the John and Jane Doe defendants

and forward to Plaintiff, who shall be responsible for effectuating service of process on these defendants; and it is further

ORDERED that Defendants the City of Buffalo, ECMC, ECMCC, Crisis Services, Flood, Watts, Abruzzino, Fleming, Jones, Hicks, Hanahan, Ringle, Ventura are directed to respond to the Complaint upon service; and it is further

ORDERED that the Clerk of Court is directed to send to Carter this Decision and Order, a copy of the complaint (Dkt. 1), and the instructions for preparing an amended complaint; and it is further

ORDERED this Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and leave to appeal to the Court of Appeals *in forma pauperis* is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure; and it is further

ORDERED that Carter shall notify the Court in writing if her address changes. The Court may dismiss the action if Carter fails to do so.

SO ORDERED

Dated: May 14, 2026
Buffalo, New York

JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE